**CORAL GABLES FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation organized under the laws of the United States of America, Plaintiff,**

v.

**Charles HARBERT and Susan Harbert, his wife, Defendants.**

No. 81–6061–CIV–JCP.

United States District Court, S. D. Florida.

Dec. 4, 1981.

Padgett, Teasley, Niles & Shaw, Fort Lauderdale, Fla., for plaintiff.

Douglas R. Bell, Fort Lauderdale, Fla., for defendants.

## ORDER GRANTING MOTION TO DISMISS AND OPINION

PAINE, District Judge.

In order for a federal district court to have subject matter jurisdiction under 28 U.S.C. 1331 the matter in controversy must inter alia arise under the Constitution, laws, or treaties of the United States. The issue before the Court is whether a federal saving and loan's suit for foreclosure of a home mortgage triggered by the mortgagor's default under the due on sale clause constitutes a claim arising under federal law.

Coral Gables Federal Savings and Loan Association seeks a declaratory judgment that it may foreclose the property owned by the Defendant in accordance with the terms of a mortgage held by the plaintiff. It is alleged that on June 7, 1978 Justus Homes, Inc. of Florida executed and delivered a promissory note secured by a mortgage on 7041 N.W. 20 Court, Margate, Florida, which was owned by the mortgagor. Justus Homes sold and conveyed the mortgaged property to George and Mickey Parker on December 19, 1978. On April 7, 1980 the Parkers sold and conveyed the mortgaged property to the defendants, Charles and Susan Harbert.

Paragraph 17 of the mortgage in this matter contained what is known as a due on sale clause. It is provided in pertinent part that "If all or any part of the property or an interest therein is sold or transferred by Borrower without Lender's prior written consent ... Lender may, at Lender's option, declare all the sums secured by this mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the property is sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this mortgage shall be at such rate as Lender shall request ..."

As alleged in the complaint the subject due on sale clause is authorized by 12 C.F.R. 545.8–3(f) (revised as of January 1, 1981). It is also alleged that the defendants would not accept an increased rate of interest as a condition to their assumption of the mortgage and have advised the plaintiff that the due on sale clause is unenforcible under Florida law unless the lender's security is impaired. Plaintiff anticipates that defendants will assert defenses of illegality and unenforcibility of the due on sale clause which is contrary to plaintiff's position that the regulation authorizing the use of the clause preempts contrary state law.

In 1933 Congress enacted the Home Owner's Loan Act (HOLA). As part of this act the Federal Home Loan Bank Board "is authorized, under such rules and regulations as it may prescribe, to provide for the

organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations' ..." 12 U.S.C. § 1464(a)(1). While HOLA does not specifically address the inclusion of due on sale clauses within mortgage instruments, the enacting legislation has been found to permit broad regulatory authority over the operation of federal savings and loans, including their investment, lending, and employment practices. HOLA was initially enacted to respond to the country's economy of the early 1930's. At that time Congress perceived the need for federal regulation of the home mortgage market.

In a changed economic climate the Federal Home Loan Bank Board may respond with what it deems to be an appropriate regulation. In its Advisory Opinion, Resolution No. 75–647 (July 30, 1975) the Board stated:

> (4) The "due on sale" clause is vital and necessary to enable savings and loan associations to adjust their loan portfolios towards current market rates, thereby protecting the associations' financial stability, and enabling them to make new home loans at lower interest rates than otherwise would be necessary to maintain an adequate yield on their mortgage portfolios.

The Board also supports the use of the due on sale clause as a means to protect the secondary mortgage market in existing home loans. Thus 12 C.F.R. 545.8–3(f) (formerly 12 C.F.R. 545.6–11) was promulgated. This regulation has been held to be within the pervasive regulatory authority of the Board and to be preemptive of contrary state law. See e.g. *Glendale Federal Savings and Loan Association v. Fox*, 481 F.Supp. 616 (C.D.Cal.1979); *Bailey v. First Federal Savings and Loan Association of Ottawa*, 467 F.Supp. 1139 (C.D.Ill.1979) and the more limited holding in *First Federal Savings and Loan Association of Gadsen County v. Peterson*, 516 F.Supp. 732 (N.D. Fla.1981).

In *First Federal Savings and Loan Association v. Lockwood*, 385 So.2d 156 (Fla. 2d D.C.A.1980) it was held that a due on sale clause is not automatically enforcible under state law without regard to traditional principles of equity. Thus a lender is denied its contractural right to foreclose a mortgage under the due on sale clause unless it alleges and proves impairment of its security. The mortgage in *Lockwood* did not contain the alternative provision of an interest adjustment for the purpose of managing the lender's mortgage portfolio. The 2nd D.C.A. noted that the lender's master form mortgage indicated that the sole purpose of its terms was the protection of its security. Thus plaintiff alleges in the complaint that the defendants are challenging the enforcibility of the due on sale clause by relying on Florida law.

▆▆▆ Jurisdiction is initially determined from a "well plead" complaint. *Mobil Oil Corporation v. Kelley*, 493 F.2d 784 (5th Cir. 1974). There are a number of proscriptions to the well-plead complaint. Jurisdiction cannot be invoked on the basis of an answer raising a federal defense. *State of Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). It is also insufficient for the plaintiff to assert that federal law invalidates some anticipated defense of the defendant. *Louisville & Nashville Railroad Company v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). And the plaintiff cannot attain federal jurisdiction by making allegations which are not required by the rules of pleading to state a particular cause of action. See Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3566.

▆▆▆ The Declaratory Judgment Act, 28 U.S.C. 2201, 2202 operates only procedurally. Federal jurisdictional concepts were not altered by the Act. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) stands for the proposition that a declaratory action can exist only if there is federal jurisdiction for the underlying coercive claim. Raising a federal claim in anticipation of a defense to be asserted by the defendant does not assert a right "arising under" for jurisdictional purposes. The plaintiff's claim itself

must present a federal issue, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose. This is not to say that a declaratory action cannot be used to test a defense. But the defense must normally arise in answer to a complaint which itself properly raises a federal question.

■ While a question of federal law may often emerge in a suit, it is necessary for jurisdictional purposes that federal law be the basis of the complaint. A right or immunity created by United States law must be an essential element of the plaintiff's cause of action for there to be jurisdiction under 28 U.S.C. 1331. *Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) states that a suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws.[1] To some degree this Cardozo explanation of the meaning of "arising under" supports a finding of jurisdiction in our case. The right or immunity created by U.S. law must be such that it will be supported if the law is given one construction or effect and defeated if it receives another. However, the complaint must disclose a genuine controversy on this issue. There must be a substantial dispute respecting the validity, construction or effect of such a law, the determination of which will effect the outcome of the suit. In the instant matter there is certainly a dispute as to the effect and application of the Board's regulation in regard to the plaintiff's right to foreclose this mortgage.[2]

■ But it is the federal nature of the right to be established which is decisive, and not the source of the authority to establish it. See *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900). There is a distinction between a statute or regulation which authorizes an action to establish a right and where the federal law itself creates the right to be established. In *Gully* Mississippi imposed a tax on the National Banks within the state. The original obligor of the tax became bankrupt and the debt was assumed by the successor bank's shareholders. The shareholders reneged on this obligation and the suit was brought against the bank as the stockholder's agent under state law. The suit was removed to federal court by the bank. There was in existence at the time a federal law permitting such a tax. If there had been no such federal statute, the bank would have had an absolute defense. The existence of a federal law permitting the tax did not change the basis of the suit—a claim for taxes under state law.

Judge Cardozo made the distinction between disputes which basically arise under law of the United States and those in which federal law is collateral. "Instead there has been [by the Courts] a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the Courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by." *Gully*, 299 U.S. at p.

---

1. In *Till v. Unifirst Federal Savings and Loan Assoc.*, 653 F.2d 152 (5th Cir. 1981) the court stated at fn. 2, "Where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a federal remedy exists. [citations omitted]. However, a claim does not arise under the law of the United States pursuant to either sections 1331 or 1337 if the relief sought is based entirely upon a state cause of action in which regulations established by a federal statute are used merely as further evidence of the right to recover under state law. [citations omitted]"

2. Although § 1331 is worded in terms of arising under laws of the United States, it is construed to include regulations. *Murphy v. Colonial Federal Savings and Loan Assoc.*, 388 F.2d 609 (2nd Cir. 1967).

118, 57 S.Ct. at p. 100. Thus some of the concepts and notions linked to the test of proximate cause can be applied to determine whether a claim arises under U.S. laws. Judge Cardozo admonished, "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation." at p. 117, 57 S.Ct. at p. 99.

■ One of the more popular statements of the test for federal question jurisdiction is that there must be "a substantial claim founded 'directly' upon federal law." Miskin, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157, 168 (1953). The F.H.L.B.B. regulation which authorizes the use of the due on sale clause does not create the savings and loan's claim. The coercive action involved here is for a mortgage foreclosure which relies on state property law. *Shoshone, supra.*[3] Under Cardozo's analysis the federal law is collateral to the plaintiff's claim. The body of law which most proximately gives rise to the plaintiff's claim is Florida law of mortgage foreclosure. The plaintiff has raised its federal claim in anticipation of the mortgagor's defense. *Skelly, supra.* The general rule is that federal preemption is a defense to a state law claim and is incapable of providing jurisdiction in of itself. *Home Federal Savings and Loan Assoc. v. Insurance Department of Iowa,* 571 F.2d 423 (8th Cir. 1978); *Schultz v. Coral Gables Federal Savings and Loan,* 505 F.Supp. 1003 (S.D. Fla.1981). It seems clear that once one recognizes that there are vast choices for selecting the legal cause to a claim and there is a distinction between the substantial cause, and those that are collateral, common-sense leads to the conclusion that this action does not directly arise under law of the United States. Accord: *Florida Federal Savings and Loan Association v. Bauer,* 515 F.Supp. 869 (M.D.Fla.1981).

■ Generally, a complaint which seeks to settle a controversy as to the meaning of contractual terms incorporating federal standards does not arise directly under federal law. Cases such as *Skelly* and *American Invs-Co. Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211 (7th Cir. 1979) discourage the ability of a contracting party to attain federal jurisdiction by incorporating a federal reference. Thus in *American Invs-Co.* a co-owner of an interest in F.H.A. mortgaged real property assigned its interest to the defendant bank as collateral contrary to an F.H.A. promulgated regulatory agreement which bound all the co-owners and prohibited the assignment of the property without F.H.A. approval. The remaining co-owner, American Invs-Co., contended that the bank's title was invalid by reason of the F.H.A. agreement. It was asserted that the resolution of the claim required a determination of the meaning and effect of the F.H.A. regulatory agreement and federal common law must be applied to make that determination.[4] Declining to hold that there was jurisdiction, the Court said while there is substantial federal involvement in the mortgage market, Congress did not intend to fashion a federal common law for this kind of suit. Unless there is a significant conflict between some federal policy or interest and the applicable state law, it is not necessary to develop uniform rules of federal common law. As in the instant matter, the federal interest is remote in comparison with the substantial interest of the state in the application of its own law.

Appellate cases which might support a finding of jurisdiction are either distinguishable or not authoritative. In *First Federal Savings and Loan Association of Boston v. Greenwald,* 591 F.2d 417 (1st Cir. 1979) there was jurisdiction to hear the savings and loan's declaratory action against the Massachusetts Commissioner of Banks to determine whether the state's

---

**3.** The property rights of private litigants are typically governed by state law. *Butner v. U. S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

**4.** § 1331 jurisdiction will support claims founded upon federal common law as well as those of statutory origin. *Illinois v. City of Milwaukee, Wisconsin,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

laws regarding payment of interest on escrow accounts were preempted by an F.H.L.B.B. regulation (12 CFR 545.6–11(c)). *Public Service Comm's of Utah v. Wycoff Co.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952), was distinguished in this case. *Wycoff* holds that where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal jurisdiction. The *Greenwald* Court said the focus was on the matter of preemption and related federal issues and that the association was subject to conflicting state and federal regulations. While the instant case and *Greenwald* appear to be jurisdictionally equivalent under the *Gully/Miskin* tests, a pragmatic analysis lends to concrete distinctions.[5] In *Greenwald* the parties are the association and a state agency. The dispute is over the operating procedures of the association and there are no real property interests at stake. There is a legitimate federal interest indicated by the fact that there are federal regulations that directly govern the disputed matter. Moreover a finding of jurisdiction in *Greenwald* will not result in an influx of federal litigation since this one case will settle the issue. Thus the factors of caseload, federal law providing the rule of decision, and the necessity for an expert and sympathetic federal jurisdiction are consistent with a finding of jurisdiction.[6]

*Williams v. First Federal Savings and Loan Assoc. of Arlington*, 651 F.2d 910 (4th Cir. 1981) provides weak authority for a finding of federal question jurisdiction in a due on sale case. In footnote 2 the Court fails to articulate its reasons for finding jurisdiction and in fact says it is uncertain as to the existence of federal question jurisdiction. Since it was a consolidated action in which the due on sale issue was preserved in one case by virtue of diversity jurisdiction, the Court said that the rule of stare decisis would apply even if there was no federal question jurisdiction.

Coral Gables Federal cites *Goldman v. First Federal Savings and Loan Association of Wilmette*, 377 F.Supp. 883 (N.D.Ill.1974)

5. In the article by William Cohen, The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law, 115 University of Pennsylvania Law Review 890 (1967) it is suggested that the "arising under" test is a pragmatic limit to federal jurisdiction rather than providing a rule of thumb. Four factors are mentioned in making a pragmatic determination of jurisdiction. They are

1) Potential caseload increase if jurisdiction is recognized.

2) The extent to which these kind of cases will turn on federal or state law.

3) The extent or necessity for an expert federal tribunal to handle federal issues of law.

4) The need for a sympathetic federal tribunal.

6. A number of cases have held that a savings and loan cannot remove from state court a mortgagor's suit attacking the enforcibility of a due on sale clause by asserting the defense of preemption, since the complaints did not plead a claim arising under federal law e. g., *Schultz v. Coral Gables Federal Savings and Loan Assn.*, 505 F.Supp. 1003 (S.D.Fla.1981); *People of the State of California v. Glendale Federal Savings Association*, 475 F.Supp. 728 (C.D.Calif.1979) but see contra. *Rettig v. Arlington Heights Federal Savings and Loan Association*, 405 F.Supp. 819 (N.D.Ill.1975), *Bailey v. First Federal Savings and Loan Association of Ottawa*, 467 F.Supp. 1139 (C.D.Ill.1979), *Meyers v.*

*Beverly Hills Federal Savings & Loan Association*, 499 F.2d 1145 (9th Cir. 1974).

It would seem that if the Court found jurisdiction in the instant case, then in future state court due on sale foreclosures, it is conceivable that the mortgagors could remove the action to federal court. The scope of the jurisdictional grant under the removal statute, 28 U.S.C. 1441(b), is virtually identical to the federal question jurisdictional statute of 28 U.S.C. 1331. While the complaint of a mortgagee in a state court due on sale foreclosure may not disclose on its face that it arises from U.S. law, the general rule is that the removal court inspects the complaint to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleading exclusively in terms of state law. *In Re Carter* 618 F.2d 1093 (5th Cir. 1980).

Moreover, the possibility of removal may not be limited to mere due on sale foreclosures. For example 12 CFR 545.8–3 states "Each loan shall be evidenced by note, bond, or other instrument which is consistent with sound lending practices. Loan instruments shall comply with applicable provisions of law, governmental rules and regulations ..." If the compass is reset for due on sale cases, new highways of litigation may come traveling into the federal court.

for support. That Court held it had jurisdiction under 28 U.S.C. 1337 to hear an action for a refund of prepaid interest when the mortgagor satisfied the Association's note. While the Court said H.O.L.A. of 1933 was an act regulating commerce, it neglected to discuss how the suit was one arising under federal law. One can argue that Goldman's claim was substantially founded on federal law since there was a F.H.L.B.B. regulation which prohibited prepayment penalties unless the loan contract made express provision therefor. The distinction would be that the regulation establishes rather than authorizes the claim. Cf. *Shoshone, supra.*

 Thus a careful analysis leads to the conclusion that the matter in controversy in this declaratory action does not arise under· federal law. As stated by the original mortgagor's namesake in *American Well Works Company v. Layne & Bowler Company,* 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), "A suit arises under the law that creates the cause of action," at p. 260, 36 S.Ct. at p. 586. Common-sense points to state law for the genesis of the plaintiff's claim. It is, for the reasons stated in this opinion

ORDERED and ADJUDGED that the defendants' motion to dismiss the complaint for declaratory judgment is granted.